## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES** | : | **CRIMINAL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 09-270** |
| | : | |
| | : | |
| **MICHAEL WRIGHT and** | : | |
| **RANDALL WRIGHT** | : | |
| | : | |

## O P I N I O N

**STENGEL, J.**                                                             **July 29, 2010**

      Michael Wright and his brother Randall Wright live a block apart from one another in Allentown and were suspected of distribution of marijuana in January of 2009. A confidential source working with DEA agents purchased a pound of marijuana from Randall Wright on January 13, 2009 and another ounce on January 27, 2009. On January 27, 2009, agents executed search warrants at the apartments of both Michael and Randall Wright. They recovered four guns, several boxes of ammunition, approximately seven thousand nine hundred dollars, fifty pounds of marijuana, and various drug paraphernalia from Randall Wright's apartment. They recovered approximately one thousand dollars, forty-three pounds of marijuana, and drug paraphernalia from Michael Wright's apartment. Michael and Randall were arrested and questioned. Randall Wright admitted that he was a "small-time bud dealer." Following the searches, Michael Wright admitted to selling marijuana for one thousand fifty dollars per pound and told police that he was

"responsible for the weed and guns."

The Wright brothers filed motions to suppress the evidence seized during the searches of their respective apartments.  For the reasons discussed in the sections to follow, I will grant the motions.

I.	**Facts and Circumstances Relevant to the Search Warrants For the Residences of Michael Wright and Randall Wright**

Jeffrey Taylor, an agent with the Drug Enforcement Agency, prepared an affidavit of probable cause to search the residences of Michael and Randall Wright on January 27, 2009.  Tr. Suppress. Hr'g, 24:24–25:4, Apr. 27, 2010.  At the suppression hearing, he testified that it is normal police practice to prepare a warrant application and a "face sheet," which is the warrant itself, both of which are pre-printed forms with blanks to be filled in by the agent or officer.  Id. at 25:7–20.  He normally drafts the affidavit of probable cause, but the United States Attorney's Office normally prepares the warrant application and face sheet.  Id. at 25:7–26:1.  In this case it appears that is exactly how it happened.

On the face sheet itself, at the place where the property to be searched is described, there is only Michael Wright's address and the phrase "SEE ATTACHMENT A."  Gov. Ex. 1.  Agent Taylor testified that "Attachment A" is normally a description of the property to be searched.  Tr. at 29:18–23.  The sheet of paper labeled "Attachment A" attached to the warrant indeed describes "26 South Howard Street, Third Floor,

Allentown, PA" as an "apartment . . . on the third floor of a tan brick three-story structure located on the southwest corner of the intersection of Maple and South Howard Streets, Allentown." In other words, normal procedure was followed and the warrant adequately described the place to be searched by incorporation of Attachment A.

The problem in this case arises from the lack of any meaningful description of the items officers had authority to seize. On the face sheet, under the section in which the warrant should describe "a certain person or property" to be seized, there is only the phrase "SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE." The affidavit of probable cause is, in fact, attached to the warrant application. It describes two controlled drug buys the confidential informant made from Randall Wright and also states that the confidential informant had observed Michael Wright with large amounts of U.S. currency. Gov. Ex. 1. The affidavit states:

> Based on the aforementioned facts, there is probable cause to believe that the fruits and instrumentalities of crimes in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 924(c), including but not limited to controlled substances, drug paraphernalia, to include packaging material; documents and items used to manufacture false identification; documents used in furtherance of drug activity, to include correspondence, drug ledgers, calendars, and telephone lists and directories; United States currency, photographs, phone numbers and phone bills, bank records, to include statements and canceled checks, and controlled substances for delivery to others, are contained at 1028 Hamilton Street, 1st Floor rear apartment, and 26 S. Howard Street, located in Allentown, Pennsylvania.

Id.

Agent Taylor testified that the section of the Michael Wright warrant that states

"SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE," normally states "See

Attachment B."  Tr. at 30:6–21.  Attachment B is usually a "listing of the items to be

seized or searched for."  Id.  Attachment B was also missing from the warrant application

(which is distinct from the warrant itself) for Michael Wright's residence.  Tr. at.

42:18–20.  On the warrant application, in the place normally reserved for "Attachment

B," the application states "See ATTACHMENT A," which, as I have already described, is

the description of the physical location of Michael Wright's residence.  The inaccuracies

and mistakes present on the application and warrant for Michael Wright's residence are

present to the same extent on the application and warrant issued for Randall Wright's

residence.  Gov. Ex. 2; Tr. at 33:24–34:34.[1]

The search warrant applications were approved by United States Magistrate Judge

Arnold Rapaport, and he signed them on January 27, 2009.  Gov. Ex. 1, 2.  In addition to

issuing the warrants, Judge Rapport granted the government's motion to impound the

search warrants, the affidavits for the search warrants, and all subsequent inventory and

---

[1]  The following is an excerpt from the government's examination of Agent Taylor:

Q:     Okay.  Everything you have testified to about Government's Exhibit 1 [the search
       warrant for Michael Wright's residence] with the inaccuracies in the typed face
       sheets, the same would apply to Government's Exhibit 2, the other address that
       you mentioned [Randall Wright's residence], is that right?
A:     Yes.

  . . .

Q:     So, both of the face sheets are identical for both of the search warrants other than
       the address, correct?
A:     Correct.

-4-

docket papers.  Id.  The warrants were executed within the hour after they were issued

that day.  Tr. at 33:20–23.

Because the affidavit of probable cause had been impounded and the warrant did

not include an Attachment B, nowhere on the warrant itself or in any incorporated

document was there a list of the items to be seized during the course of the search.  At the

suppression hearing, Agent Taylor was questioned whether he noticed that the warrants

did not state "See Attachment B" in the appropriate place or have an Attachment B.

Agent Taylor testified that he did not, because during the time prior to the execution of

the warrants, "we had made a . . . controlled purchase earlier in the day and we were . . .

in the process of obtaining a search warrant [and] doing the affidavit as well as

organizing anywhere from thirty to thirty-five officers."  Tr. at 33:5–9.  In other words, it

was a busy time for him.  Agent Taylor also testified that he relied on the U.S. Attorney's

Office to prepare the face sheets, that it is his practice to rely on the U.S. Attorney's

Office for this purpose, and that normally, warrants prepared by the U.S. Attorney's

Office refer to "Attachment B" in the appropriate place and include an attachment B

listing the items to be seized.  Id. at 35:3–25.

Agent Taylor also confirmed that he was "intimately familiar" with the Fourth

Amendment requirement that warrants state with particularity the items to be seized

during a search.  Tr. at 40:24–41:3.  He acknowledged that normally Attachment B

contains a description of the items to be seized and that it is attached to the warrant as a

separate sheet of paper.  Tr. at 43:13–17.  Agent Taylor testified that, though he knew that

as a practice, the application and warrant face page should have referred to and should

have included an Attachment B, he "didn't take notice" of whether the Wright warrants

had an Attachment B, and he "just assumed everything that was supposed to be there was

there."  Tr. 42: 22–25.  When asked whether he checked to see that there was an

Attachment B in the packet submitted to the Magistrate Judge, he stated that he did not.

Tr. 43:23–44: 7.


**II.**     **Discussion of Legal Issues Raised by the Motions to Suppress**

    **A.     The Fourth Amendment, Particularity, and the Exclusionary Rule**

The Fourth Amendment protects the right of individuals to be free from

unreasonable searches and seizures.  Search warrants must describe with particularity the

place to be searched and the items to be seized.  U.S. CONST. amend. IV ("The right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, shall not be violated, and no warrants shall issue, but upon

probable cause, supported by oath or affirmation, and particularly describing the place to

be searched, and the persons or things to be seized.").  A particular description of the

items police may lawfully seize as part of a search is "the touchstone of a warrant."  Doe

v. Groody, 361 F.3d 232, 239 (3d Cir. 2004).  A written description accomplishes three

things: "[f]irst, it memorializes precisely what search or seizure the issuing magistrate

intended to permit.  Second, it confines the discretion of the officers who are executing the warrant.  Third, it "inform[s] the subject of the search what can be seized."  Id. (internal citations omitted).

The exclusionary rule forbids the use at trial of evidence obtained in violation of the Fourth Amendment.  This "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."  United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).  It does not proscribe the use of illegally obtained evidence in all situations.  Id.  Rather, whether the sanction of exclusion is imposed "is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct."  United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting Illinois v. Gates, 426 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Prior to the Supreme Court's recent decision in Herring v. United States, --U.S--, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), the accepted standard for whether the exclusionary rule applied in a given case was whether the officer performing a search had "an objectively reasonable belief that [his] conduct did not violate the Fourth Amendment."  Leon, 468 U.S. at 918, 919-920 (internal citations omitted) (finding that the exclusionary rule did not apply "where the officer's conduct [in relying on a search warrant issued by a Magistrate Judge] is objectively reasonable . . . for it is painfully

apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances.").  Despite this focus on the importance of objective reasonableness, the exception is termed the "good faith exception" to the exclusionary rule.[2]  See e.g., Leon, 468 U.S. at 919 n.20 ("Many objections to a good-faith exception assume that the exception will turn on the subjective good faith of individual officers. . . . The objective standard we adopt . . . requires officers to have a reasonable knowledge of what the law prohibits); Illinois v. Krull, 480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (finding that the good-faith exception applies where an officer relied on a statute that was later invalidated and observing that "[t]he application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant.").

In Herring, the Supreme Court used both narrow and broad language in describing the scope of the good faith exception.  It ultimately affirmed the Eleventh Circuit's decision not to exclude evidence obtained pursuant to a recalled search warrant that was mistakenly present in a computer database as active.  Herring, 129 S.Ct. at 698.  The Court held that exclusion was not appropriate where the police error "was the result of

---

[2]  At least one commentator has pointed out that the term "good faith exception" is a misnomer for this reason.  See Albert W. Alschuler, Herring v. United States: A Minnow or a Shark, 7 Ohio St. J. Crim. L. 463, 484-85 (2009) (citing Leon, 468 U.S. at 922 n.23).

isolated negligence attenuated from the arrest." Id. Rather, the Court found that

exclusion is only proper in situations where the police conduct at issue is "deliberate,

reckless, or grossly negligent" or where exclusion will deter "recurring or systemic

negligence." Id. at 700, 701-02. It does not apply in these situations because the

deterrent benefits of the rule do not outweigh the substantial costs of exclusion. Id. at

700, 702; see also United States v. Tracey, 597 F.3d 140, 151 (3d Cir. 2010). Deterrence

will be achieved, the Court reasoned, "only if it can be said that the law enforcement

officer had knowledge, or may properly be charged with knowledge, that the search was

unconstitutional under the Fourth Amendment." Herring, 129 S.Ct. at 701-02.

The good faith exception to the exclusionary rule will not apply in certain limited

circumstances. As set forth in Leon, and as adopted and recently affirmed by the Third

Circuit, it will not apply in four distinct situations:

> 1) where the magistrate judge issued the warrant in reliance on a
> deliberately or recklessly false affidavit;
> 2) where the magistrate judge abandoned his or her judicial role and
> failed to perform his or her neutral and detached function;
> 3) where the warrant was based on an affidavit so lacking in indicia of
> probable cause as to render official belief in its existence entirely
> unreasonable; or
> 4) where the warrant was so facially deficient that it failed to particularize
> the place to be searched or the things to be seized.

Tracey, 597 F.3d at 151 (citing United States v. Zimmerman, 277 F.3d 426, 436-37 (3d

Cir. 2002).

**B.    Incorporating the Affidavit of Probable Cause To Cure a Deficient Warrant**

With no list of "items to be seized" and no "Attachment B," the government's fall-back position is to refer to the affidavit of probable cause.  Here, the affidavit of probable cause is clear and specific, and it describes what objects or items the police were looking for in the Wright apartments.  It was certainly available and attached to the applications for the warrants and was considered by Magistrate Judge Rapoport.  It was not, however, incorporated into the warrants and cannot substitute for the missing list or the absent "Attachment B."

"[A]n affidavit may be used in determining the scope of a warrant that lacks particularity if the warrant is 'accompanied by an affidavit that is incorporated by reference.'"  Tracey, 597 F.3d at 146-47 (citing United States v. Johnson, 690 F.2d 60, 64 (3d Cir. 1982) (finding that the warrant did not adequately incorporate the accompanying affidavit of probable cause because it did not contain explicit words of incorporation)).  In other words, a document—usually an affidavit or list of items to be seized—may be construed in conjunction with a warrant to determine whether the requisite information is present.  Incorporation by reference is allowed where the warrant (1) uses appropriate words of incorporation and (2) the supporting documentation accompanies the warrant.  See id. at 147.

When the face of a warrant properly incorporates an affidavit or list, but that affidavit or list is sealed and does not accompany the warrant, it cannot be used to

construe the scope of the warrant and that warrant lacks the particularity required by the Fourth Amendment. Bartholomew v. Commonwealth, 221 F.3d 425, 429 (3d Cir. 2000) ("We . . . hold that, generally speaking, where the list of items to be seized does not appear on the face of the warrant, sealing that list, even though it is 'incorporated' in the warrant, would violate the Fourth Amendment."). The Tracey court reaffirmed this ruling. 597 F.3d at 147, n. 6 (observing that the warrant in Bartholomew lacked the particularity required by the Fourth Amendment because the exhibit to which the warrant referred, which contained a list of the items to be seized, was sealed). The attachment of an affidavit or list to a warrant which itself lacks the requisite level of particularity satisfies Fourth Amendment requirements. See Bartholomew, 221 F.3d at 428-29 (citing United States v. McGrew, 122 F.3d 847, 849 (9th Cir. 1997)).

There is no doubt that had the affidavit of probable cause prepared by Agent Taylor been unsealed and attached to the warrants executed at the Wright residences, it would have been properly incorporated due to the presence on the face of the warrant of the phrase "SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE." However, the affidavit accompanying the Wright warrants was sealed and impounded, at the request of the government, and did not accompany the warrant when it was executed. The attachment normally present containing a list of the items to be seized (the nonexistent "Attachment B" referred to by Agent Taylor) was nowhere listed on the warrant and nowhere attached to the warrant or warrant application.

In sum, the face of each Wright warrant lacked a description of the items to be seized, and there was no document properly incorporated into either warrant that satisfied the Fourth Amendment's particularity requirement.

### C.     Is the Warrant in This Case a General Warrant or an Overbroad Warrant?

I am left to consider the validity of each warrant on its face.  The government argues the Wright warrants were "overbroad" and not "general."  The distinction is key, as general warrants are strictly prohibited under the Fourth Amendment, while overbroad warrants are cured if limited by operation of a narrow search or if the executing officers acted in good faith.  I note at the outset that I do not believe the Wright warrants were either general *or* overbroad, and that instead, they were simply invalid for lacking *any* description of the items to be seized.

A general warrant is one "that authorizes 'a general exploratory rummaging in a person's belongings.'"  United States v. Christine, 687 F.2d 749, 752 (3d Cir. 1982) (citing Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)).  A general warrant contains a list of items to be seized so indefinite or generic as to offend the Fourth Amendment's particularity requirement.  Id. at 752-53. "[E]xamples of general warrants are those authorizing searches for and seizures of such vague categories of items as 'smuggled goods,' 'obscene materials,' 'books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written

instruments concerning the Communist Party of Texas,' 'illegally obtained films,' and 'stolen property.'" <u>United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents</u>, 307 F.3d 137, 149 (3d Cir. 2002) (citing <u>Christine</u>, 687 F.2d at 753).

In contrast, an overbroad warrant "'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause." <u>Ninety-Two Thousand Four Hundred Twenty-Two Dollars</u>, 307 F.3d at 149 (citing <u>Christine</u>, 687 F.2d at 753-54). An overbroad warrant may not result in a Fourth Amendment violation if, for example, those phrases in the warrant invalid for lack of probable cause are redacted, <u>id.</u>, or police confine their search to the narrower terms in an incorporated affidavit, <u>Groody</u>, 361 F.3d at 240. The Third Circuit has stressed that reference to an *unincorporated* affidavit is only appropriate where the warrant contains some ambiguity that is resolved by reference to the affidavit,[3] or "the affidavit is particularized but the warrant is overbroad." <u>Groody</u>, 361 F.3d at 240.

Recently, the Third Circuit affirmed a District Court's finding that a warrant and list of items to be seized together were overbroad, because the attached and incorporated list sought "evidence which supports the allegation of 'the obtaining, secreting, transfer

---

[3] The court provided as one example of this first exception the situation in <u>United States v. Ortega-Jimenez</u>, 232 F.3d 1325, 1329 (10th Cir. 2000), where the challenged warrant described the place to be searched and the items to be seized, but reference to the affidavit was necessary to determine the meaning of the word "present" in the phrase "persons and vehicles of individuals present and arriving."

and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money' or which showed [a] financial relationship between [the defendant] and conspirators." United States v. Leveto, 343 F. Supp. 2d 434, 446 (W.D.Pa. 2004), aff'd 540 F.3d 200, 211 (3d Cir. 2008) (observing that "[the] only attachment was a list of the type of documents to be seized which used generic terms" and holding that "[the] District Court correctly concluded that, to the extent that the warrant was 'generic,' it was merely overbroad.").[4]

It is clear that this case does not involve an overbroad warrant. I need not consider whether Groody allows consideration of the warrant in light of the unincorporated affidavit. The warrant in this case is not overbroad because it contains *no* description, specific, vague, or otherwise, of the items to be seized from the Wright apartments. Rather, it states in the portion of the warrant for a description of the items to be seized, "SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE" (which was under seal and not attached). Because it contains no such description, the situations recognized by the Third Circuit in Groody (in which an overbroad warrant may be saved by reference to an unincorporated affidavit) simply do not apply. Although it seems the Third Circuit would

---

[4] The government incorrectly represents the facts in Leveto, arguing that, in Leveto and in this case, the Magistrate Judge sealed the affidavit of probable cause. Gov. Sur-Reply at 7. This is true, however, the lower court in Leveto took care to note that "the list of items to be seized was incorporated into the warrants and the warrants and such lists were served upon the defendant at the time of the execution of the warrants." 343 F. Supp. 2d at 446. In this case, the sealed affidavit containing a list of the items to be seized did *not* accompany the warrant when it was executed.

allow me to construe vague warrant terms by referring to an unincorporated affidavit, this by no means opens the door to construing a warrant with *no* seizure terms by reference to such an affidavit.

### D.    The "High Function" of a Search Warrant: <u>Groh v. Ramirez</u>

The facts of this case are very close to <u>Groh v. Ramirez</u>, 540 U.S. 551, 124 S.Ct. 1284, 157 L. Ed. 2d 1068 (2004).  <u>Groh</u> involved a <u>Bivens</u> action[5] against a federal agent who conducted a search of a home pursuant to a warrant that failed to identify any of the items to be seized.[6]  Specifically, the warrant application included an itemized list of the contraband the agents hoped to find, while the warrant itself did not incorporate the list. <u>Id.</u> at 554-555.  In the part of the warrant form that called for a description of the items to be seized, the warrant instead described the respondent's two-story home.  <u>Id.</u>[7]

---

[5]  In <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L. Ed. 2d 619 (1971), the Supreme Court held that an individual injured by a federal agent's Fourth Amendment violation may bring an action for damages against that agent.

[6]  Although the ultimate issue in <u>Groh</u> was whether the agent sued could invoke qualified immunity as a defense, the Court's analysis of the underlying Fourth Amendment violation was detailed and extensive.  The threshold issue in this case is whether police violated the Wright brothers' Fourth Amendment rights.  If I find as a matter of law that there was no violation, exclusion ceases to be an issue.  The presence of a Fourth Amendment violation is also the underlying issue in <u>Groh</u>.  Therefore, I see no reason to disregard it.

[7]  "[T]he portion of the form that called for a description of the 'person or property' to be seized . . . stated: '[T]here is now concealed [on the specified premises] a certain person or property, namely [a] single dwelling residence two story in height which is blue in color and has two additions attached to the east. The front entrance to the residence faces in a southerly direction.'" <u>Groh</u>, 540 U.S. at 554 & n.2.

The Court found the warrant "plainly invalid." Groh, 540 U.S. at 557. The petitioner acknowledged that the warrant was deficient on its face because it failed to describe in any way the items to be seized. Id. However, he argued that the search itself was reasonable because the Magistrate Judge authorized it on the basis of probable cause, the agents verbally described the items to be seized, and "the search did not exceed the limits intended by the Magistrate [Judge] and described by the petitioner." Id. at 558. The Court firmly rejected this argument, noting that the "high function" of a search warrant "is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection." Id. at 557. It held that because "the warrant did not describe the items to be seized *at all* . . . [it] was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law." Id. at 558 (emphasis in original) (citations omitted).

Finally, the Court noted that a warrant's lack of particularity renders it unconstitutional even when the search conducted pursuant to that warrant is otherwise reasonable. Groh, 540 U.S. at 559-60. It rejected the petitioner's contention that the search should be "exempt from the presumption of unreasonableness if the goals served by the particularity requirement [including the prevention of general searches] are otherwise satisfied." Id. at 560. It recognized that the scope of the petitioner's search had not gone beyond the description contained in the warrant application, but reasoned that,

"[e]ven though petitioner acted with restraint in conducting the search, 'the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer.'" Id. at 561 (citing Katz v. United States, 389 U.S. 347, 356, 88 S.Ct. 507, 19 L. Ed. 2d 576 (1967)). It also reaffirmed that the particularity requirement serves not only to prevent general searches, but also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." Id. (quoting United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L. Ed. 2d 538 (1977)).

In this case, we are presented with a warrant that, on its face, contains *no* description of the items to be seized and includes *no* attachment meeting the particularization requirement. In Groh, the Supreme Court recognized that a search conducted pursuant to such a warrant is an unconstitutional warrantless search, *even when* the warrant application sets forth the items to be seized during the search and the agent executing the search limits himself to the scope of the application. Therefore, I decline to characterize the Wright warrants as "general," because they contain not a vague or generic list of items to be seized, but rather, as in Groh, no description at all. The Wright brothers' argument that the warrants are invalid for lack of particularity is correct. See United States v. Yusuf, 461 F.3d 374, 393 (3d Cir. 2006) (discussing Groh); United States v. Wecht, 619 F.Supp.2d 213 (W.D.Pa. 2009) (granting a motion to suppress evidence when the affidavit, which was referred to on the warrant as an "Exhibit" and which

contained the list of items to be seized, was sealed and was not attached to the warrant during execution).

### E.    The Exclusionary Rule: The Wrong Remedy for the Wright Case?

The government argues against the application of the exclusionary rule because the agents and officers here acted in good faith, an argument that assumes the warrant is merely "overbroad."  The government also presses the more general argument that, because police misconduct was not involved in this case, exclusion would achieve no valid goal.

### 1.    Significance of United States v. Tracey

First, the government argues this case is analogous to Tracey, 597 F.3d 140, where the Third Circuit found that applying the exclusionary rule to evidence obtained during execution of an overbroad warrant was not justified.  Gov.'s Sur-Reply at 10-11.  In Tracey, the court determined that the warrant was overbroad (not general) because, though it listed the items to be seized as "[any] items, images, or visual depictions representing the possible exploitation of children including video tapes or photographs" and described specific computer devices, the phrase "possible exploitation of children" was vague.  Id. at 143.  It ruled that the warrant was not general, and exclusion was not justified, because the executing officer reasonably relied on more specific information

contained in the affidavit of probable cause.  Id. at 151-52.  Unlike in this case, the warrant *did* contain a description of the items to be seized.  The description was faulty for its indefinite description of the *nature* of the items to be seized, but it did contain a description.  Moreover, the court found that the officer "could have reasonably relied on the warrant because a reasonable officer in his position would assume that the warrant incorporated and would be construed with the attached affidavit."  Id.

        Here, we have a warrant which, *on its face*, contains no description of the items to be seized from the Wright residences.  The Tracey court's finding that the good faith exception applied was based on its conclusion (1) that a reasonable officer might believe the warrant could be construed in light of the attached but sealed affidavit, (2) that the phrase "possible exploitation of children" did not "make it so 'facially deficient' that no reasonable officer could rely on it," and (3) that a reasonable officer would have confidence in the warrant after presenting it to a District Attorney and a Magistrate Judge for approval.  Id. at 152-53.  As far as the warrant construction argument, I believe this case is crucially distinguishable from Tracey because the warrants at issue are not overbroad, but are rather invalid for a lack of particularity.  The warrants in Tracey were accompanied by a list of items to be seized.  The officer in Tracey was found to have acted in good faith because he relied on a warrant with *some* description of items to be seized.  The Tracey court's finding that exclusion was inappropriate is inapplicable here because of the marked difference in the facts of Tracey from the facts of this case.

-19-

The government also stresses the importance of Agent Taylor's reliance on the "advice and representations of the prosecuting attorney and a magistrate judge" in making its good faith argument. Gov. Sur-Reply at 11. The Tracey court did note that the executing officer was reasonable to rely on these authorities. 597 F.3d at 153. However, the officer's reliance on the District Attorney and Magistrate Judge was not the sole reason for the court's finding that good faith existed. More importantly, the warrant in Tracey was enhanced by a list of items to be seized.[8]

The government raises a number of arguments against exclusion in its reliance on Tracey. But Tracey is too factually distinct in many important respects for me to accept any of them. Perhaps most importantly, it should be noted that Tracey was decided after the Supreme Court's ruling in Herring. Although the Tracey court quoted Herring's good-faith language reserving exclusion only for situations when an officer "had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment," the Tracey court also reiterated that "the

---

[8] In finding that "a reasonable officer would also have confidence in the validity of the warrant after presenting it and having it approved by a district attorney and the Magistrate Judge," the court cited United States v. Otero, 563 F.3d 1127, 1134-36 (10th Cir. 2009), where the Tenth Circuit reversed the District Court's order excluding evidence obtained pursuant to a warrant that lacked particularity. However, in that case, the attachment to the warrant containing the items to be seized contained two subsections, one of which contained a vague description of the items to be seized and another which was more specific. The court found that the officers acted in good faith in believing they could construe the vague portion with the specific portion, and that they acted in good faith when they relied on supervision received from a United States Attorney. Id. Again, I believe the fact which distinguishes Otero and Tracey from this case is the presence in each of some description on the face of the warrant or in an incorporated affidavit of the items to be seized, which is lacking entirely here.

good faith exception does not apply . . . where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." Tracey, 597 F.3d at 150, 151 (citing Herring, 129 S.Ct. at 701). Quite simply, the warrant in this case failed entirely to particularize the items to be seized during the search of the Wright residences. It failed to incorporate the affidavit of probable cause, which did contain the description. There is no basis in Tracey upon which I can find that a facially deficient warrant such as this one falls under the good faith exception.

### 2.    The "Narrowed Scope" of the Exclusionary Rule

In its brief and more specifically at oral argument, the government invites me to consider a recent Supreme Court "trend" to cut back on the use of the exclusionary rule. Specifically, the government claims that "the U.S. Supreme Court has carved out certain exceptions to the warrant requirements and [has] recognized that even some violations of the Fourth Amendment will not mandate the drastic remedy of suppression of physical evidence in a criminal case." Gov. Sur-Reply, 6.

### a.    Hudson v. Michigan

One such case is Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 154 L. Ed. 2d 56 (2006), where the Court concluded that suppression of evidence obtained in violation of the "knock-and-announce rule" is inappropriate.

The government cites the following portion of the Hudson decision:

Suppression of evidence, however, has always been our last resort, not our first impulse. The exclusionary rule generates "substantial social costs," which sometimes include setting the guilty free and the dangerous at large. We have therefore been "cautio[us] against expanding" it, and "have repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." We have rejected "[i]ndiscriminate application" of the rule, and have held it to be applicable only "where its remedial objectives are thought most efficaciously served"—that is, "where its deterrence benefits outweigh its 'substantial social costs."

Hudson, 547 U.S. at 591 (internal citations omitted).

In Hudson, the court considered at length the issue of "attenuation," or the relation between the illegal aspect of a search and the evidence sought to be suppressed. Hudson, 547 U.S. at 592. It explained that the absence of a link between the evidence actually obtained and the illegal aspect of a search makes exclusion inappropriate. Id. at 592-93.[9] It observed that attenuation also occurs when, "even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." Id. at 593. By way of example, the Court discussed New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L. Ed. 2d 13 (1990), where the statement obtained from the defendant during an illegal warrantless arrest in his home was suppressed, but the statement taken from the suspect *outside* the house was not, because suppressing it "would not serve the purpose of the rule that made

---

[9] Stated inversely, "the indirect fruits of an illegal search or arrest *should* be suppressed when they bear a sufficiently close relationship to the underlying illegality." New York v. Harris, 495 U.S. 14, 19, 110 S.Ct. 1640, 1643, 109 L. Ed. 2d 13 (1990) (emphasis added).

Harris' in-house arrest illegal." Hudson, 547 U.S. at 593 (citing Harris, 495 U.S. at 20)).

The Hudson Court reasoned that the purpose for the exclusionary rule—ensuring that citizens may shield their persons, houses, papers, and effects from government scrutiny—is unrelated to the purpose for the knock-and-announce rule. Id. at 593. The knock-and-announce rule serves to protect residents from unannounced police entry, avoid the destruction of property, and ensure that residents have the opportunity to prepare themselves for police entry. Id. at 594. Because the only violation in Hudson was a knock-and-announce violation, the Court concluded, the exclusionary rule was inapplicable.

In Justice Kennedy's concurring opinion, he noted that:

> [The] continued operation of the exclusionary rule, as settled and defined by our precedents, is not in doubt. . . . As to the basic right in question, privacy and security in the home are central to the Fourth Amendment's guarantees as explained in our decisions and as understood since the beginnings of the Republic . . . It bears repeating that it is a serious matter if law enforcement officers violate the sanctity of the home by ignoring the requisites of lawful entry. Security must not be subject to erosion by indifference or contempt.

Id. at 603 (Kennedy, J., concurring). I believe this pronouncement belies the claim that the exclusionary rule should be discarded when the Fourth Amendment violation in question—a complete lack of particularity in the warrant—is one written into the very text of the amendment.

**b.      Herring v. United States**

The government also cites the Supreme Court's 2009 decision in <u>Herring</u>, 129

S.Ct. 695, where it again addressed the limited applicability of the exclusionary rule.  In

<u>Herring</u>, the Court concluded that exclusion was not mandated after police, relying on

what was later revealed to be a recalled search warrant, seized drugs and guns from the

petitioner's home.  <u>Id.</u> at 698-99.  The warrant's appearance in a database as outstanding

was the result of computer error.  <u>Id.</u>

_____The Court began its opinion with a narrowly-worded holding that "[h]ere the error

was the result of isolated negligence attenuated from the arrest. . . . [I]n these

circumstances the jury should not be barred from considering all the evidence."  <u>Id.</u> at

698.  It then considered the history and scope of the exclusionary rule, noting that past

decisions reflected a policy of allowing evidence to be considered as long as law

enforcement acted in "objectively reasonable reliance on a warrant."  <u>Id.</u> at 701 (citing

<u>Leon</u>, 468 U.S. at 922; <u>Krull</u>, at 349-350; <u>Arizona v. Evans</u>, 514 U.S. 1, 115 S.Ct. 1185,

131 L.Ed.2d 34 (1995)).  It reiterated that a Fourth Amendment violation does not

necessarily mandate exclusion of the evidence obtained, but rather, depends on the

outcome of the objective good faith inquiry.  <u>Id.</u> at 700.  The Court noted that exclusion

applies "only where it 'results in appreciable deterrence'" of future Fourth Amendment

violations, and that, even then, "the benefits of deterrence must outweigh the costs."  <u>Id.</u>

(citing <u>Leon</u>, 468 U.S. at 909-10).  The costs of exclusion include "letting guilty and

possibly dangerous defendants go free—something that 'offends basic concepts of the criminal justice system.'" Id. at 701. The Court stated that, in assessing the benefits of deterrence, courts must determine whether the conduct to be deterred is police or judicial conduct. Id.[10] If police conduct is at issue, it reasoned, the extent of police culpability, or "the flagrancy of the police misconduct," must be examined. Id. It found that "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id. at 702.[11]

Certainly, Herring has proven to be a controversial and potentially game-changing decision as far as the continued validity of the exclusionary rule. Numerous commentators have argued that the Herring decision's focus on police culpability represents a significant departure from Leon and its objective reasonableness standard, transforming the good faith exception and allowing the use of evidence obtained as the result of police negligence where before such evidence would have been suppressed.[12]

---

[10]   In noting the difference between police and judicial misconduct, the Court provided as examples of non-police misconduct Leon, 468 U.S. at 922, where police relied in good faith on a warrant that was later invalidated as lacking probable cause, and Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L. Ed. 2d 737 (1984), where police relied on a warrant that was later invalidated because a judge failed to make "clerical corrections."

[11]   By way of example, the Court noted that flagrant conduct was notably present in two flagship Fourth Amendment cases. In the first, Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L. Ed. 652 (1914), police broke into a defendant's home and took incriminating papers without a warrant and without probable cause. In Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed. 2d 1081 (1961), police forced entry into the petitioner's home and kept her lawyer from entering while relying on a false warrant.

[12]   See e.g., George M. Dery III, *Good Enough for Government Work: The Court's Dangerous Decision, in* Herring v. United States*, to Limit the Exclusionary Rule to Only The*

Indeed, other circuits have noted the expansive reach of the good-faith exception articulated in Herring. Two recent cases in the Sixth and Eighth Circuits exhibit a potential split over the precise question presented in this case: whether Herring has so elevated the importance of police culpability that, even in those cases where the good faith exception has before not applied, courts are now free to admit evidence obtained in violation of the Fourth Amendment when a police officer did not exhibit gross negligence or misconduct.

In United States v. Lazar, the Sixth Circuit answered this question in the negative, finding the Supreme Court's decision in Groh confirming that a warrant may be so facially deficient that the executing officers cannot presume it to be valid was not

Most Culpable Police Behavior, 20 Geo. Mason U. Civ. Rts. L.J. 1, 27-28 (2009) ("Herring signaled to police nationwide that they need not avoid negligence by an individual law enforcement agent; as long as the mistake was not intentional or reckless, evidence obtained through a defective process will not be excluded. The Fourth Amendment standards that officers should now aspire to avoid are 'flagrant or deliberate violation[s] of rights,' 'intentional conduct that [is] patently unconstitutional,' acting 'without a shadow of authority,' and making statements that are a 'deliberate falsehood or a reckless disregard  for the truth.'"); Wayne LaFave, The Smell of Herring: A Critique of the Supreme Court's Latest Assault on the Exclusionary Rule, 99 J. Crim. L. & Criminology 757, 765 (2009) (criticizing the Supreme Court's interpretation of its precedential good-faith cases and observing that, while "[t]here is in these cases, to be sure, recognition that there must also be some inquiry to ensure that the police should not have appreciated the subsequently declared defect in the directive they received from the judiciary or legislature . . . that is a far cry from an across-the-board limitation of the exclusionary rule to instances of 'flagrant or deliberate' violations of the Fourth Amendment."); Alschuler, supra note 3 at 512-513 ("Herring's . . . statements, by shifting attention from the reasonableness of the search to the reasonableness of the constable, threaten to bring the development of Fourth Amendment law to an end. . . . Under a 'negligent constable' standard, courts treat every arguably lawful act as though it were lawful; and under a 'grossly negligent constable' standard, they treat every act close to being arguably lawful as though it were lawful."); Thomas K. Clancy, The Irrelevancy of the Fourth Amendment in the Roberts Court, 85 Chi.-Kent L. Rev. 191 (2010).

questioned or overruled in <u>Herring</u>. 604 F.3d 230, 237-38 (6th Cir. 2009). In <u>Lazar</u>, police obtained a warrant and executed a search of a physician's office as part of a health care fraud investigation. <u>Id.</u> at 233. The warrant included an Attachment A and an Attachment B which described the place to be searched and the items to be seized, respectively. <u>Id.</u> Along with the warrant and attachments, police presented to the issuing Magistrate Judge a sheet of paper with names of patients whose files could be seized. <u>Id.</u> It was unclear which names were on the list submitted to the Magistrate Judge, <u>see id.</u> at 234, n.2, but it became apparent that files were seized which may *not* have appeared on the list submitted to the Magistrate Judge, <u>id.</u> at 236. The court held that "[<u>Groh</u>], rather than its more recent, but less on point, decision in [<u>Herring</u>], controls, and requires suppression of all patient records seized beyond the scope of any patient lists presented to the issuing Magistrate Judge." <u>Id.</u> (internal citations omitted). The court reasoned that <u>Groh</u>'s holding—that a warrant failing to describe with particularity the items to be seized is clearly unreasonable and in violation of the Fourth Amendment—applied to any patient records seized that did not appear on the list submitted to the Magistrate Judge. <u>Id.</u> It reiterated the importance, as described in <u>Groh</u>, of "written assurance that the Magistrate [Judge] actually found probable cause to search for, and to seize, every item mentioned in the affidavit." <u>Id.</u> at 237 (citing <u>Groh</u>, 540 U.S. at 560). It unequivocally held that "<u>Herring</u> does not purport to alter that aspect of the exclusionary rule which applies to warrants that are facially deficient warrants *ab initio*." <u>Id.</u> at 237-38.

The Eighth Circuit has taken a different approach and relied on <u>Herring</u> to allow the introduction of evidence obtained in reliance on a facially invalid warrant. <u>See</u> <u>United States v. Hamilton</u>, 591 F.3d 1017 (8th Cir. 2010). After probation officers entered Hamilton's home and discovered evidence that he had violated some of the terms of his parole, a detective prepared a search warrant application to perform a more extensive search of the home. <u>Id.</u> at 1020. The detective's affidavit of probable cause, which he presented to the Magistrate Judge, contained a list of items to be seized. <u>Id.</u> at 1021. The list should also have appeared on the face of the warrant, but the detective inadvertently deleted it before executing the warrant. <u>Id.</u> The warrant referenced the affidavit of probable cause, but the affidavit did not accompany the warrant upon execution. <u>Id.</u> Therefore, <u>Hamilton</u> is factually almost indistinguishable from this case, as the face of the warrant did not have a list of items to be seized, and the affidavit, which did contain such a list, did not accompany the warrant. There, as here, the officer did not exceed the scope of the affidavit's list in executing the search. <u>Id.</u> In reviewing the District Court's denial of the motion to suppress, the Eighth Circuit deferred ruling on whether the list of items in the affidavit had been properly incorporated and therefore met the Fourth Amendment's particularity requirement, citing conflicting cases within the Eighth Circuit. <u>Id.</u> at 1025-26.[13]

---

[13] One, <u>Baranski v. United States</u>, 515 F.3d 857, 860, 861 (8th Cir. 2008), held that reference to an affidavit shown to the issuing Magistrate Judge, even a sealed one, satisfies the particularity requirement even if the affidavit does not accompany the warrant upon execution. The other, <u>United States v. Curry</u>, 911 F.2d 72, 76-77 (8th Cir. 1990), which the Supreme Court

The court reasoned that, whether the warrant met the Fourth Amendment's particularity requirement or not, it could reach the issue of exclusion based on the facts of the case and guided by Herring. Id. at 1027-28. It found that Groh's concerns about a Magistrate Judge's limitation of the scope of a search were met, because the issuing judge had reviewed both the warrant application and the affidavit and thereby approved the scope of the search as set forth in the affidavit. Id. at 1028-29. It then found that there was no deterrent effect to suppression, because the detective, "with full knowledge of the items authorized to be seized, carefully executed the warrant, seizing only those items included in the list of items in the affidavit." Id. at 1029. This behavior, it found, was not the type of intentional, patently unconstitutional behavior discussed in Herring as appropriate for the use of the exclusionary remedy. Id. The court went on to describe the detective's behavior as nothing more than "nonrecurring negligence," and claimed that it was "objectively reasonable." Id. at 1029, 30.

Lazar and Hamilton are the two Circuit Court cases most factually similar to this case. Other courts, including the Third Circuit in Tracey, and the Second and Tenth Circuits, have issued opinions calling attention to Herring's focus on the level of police culpability in determining whether to apply the exclusionary rule.[14] However, in those

cited in Groh, 540 U.S. at 558, held that a description of items to be seized in a supporting affidavit can supply the requisite level of particularity only if it both accompanies the warrant and the warrant uses suitable words of reference or incorporation.

[14] The facts of Tracey are described in Section II (C)(1) of this memorandum in great detail, and I will not discuss them again here. The Second Circuit had occasion to address

cases, there was enough specificity in the warrants for the courts to consider applying the

good faith rule.  In this case, the warrants were facially invalid and we therefore are not

required to determine whether the executing officer acted in good faith.

In <u>Herring</u>, the Supreme Court did not abandon or question its clear statement in

<u>Leon</u> that "a warrant may be so facially deficient—i.e., in failing to particularize the place

to be searched or the things to be seized—that the executing officers cannot reasonably

presume it to be valid."  468 U.S. at 923.  In <u>Tracey</u>, the Third Circuit repeated this rule,

presuming it to be valid even in light of <u>Herring</u>.  In the absence of a clear Supreme Court

or Third Circuit ruling that a facially invalid warrant *can* somehow be relied on in

objective good faith, I do not believe the good faith inquiry set forth in <u>Herring</u> applies in

this case.  I acknowledge that the level of "police culpability" in this case is low, and that,

had the warrant here had *some* description of the items to be seized, <u>Herring</u> would

mandate a consideration of Officer Taylor's level of responsibility for the error in this

case.  However, the Third Circuit has not signaled that <u>Herring</u> spelled the end of the

---

<u>Herring</u> in <u>United States v. Julius</u>, where police performed a search incident-to-arrest of the
defendant, a parole absconder.  - - F.3d. - -, 2010 WL 2331119 (2d Cir. June 11, 2010).  The
court found that the search was not a valid search-incident-to-arrest, but remanded to the District
Court to consider "whether, if [the agent's] search was conducted in violation of the Fourth
Amendment, the exclusionary rule applies in light of <u>Herring</u>," and cautioning it to "consider
whether the other circumstances of the search support a finding that the 'law enforcement
officer[s] had knowledge, or may properly be charged with knowledge, that the search was
unconstitutional under the Fourth Amendment,' requiring suppression."  <u>Id.</u> at *6 (internal
citations omitted).  In <u>United States v. Otero</u>, *supra* note 9, the Tenth Circuit applied <u>Herring</u> in a
case where the executed warrant contained multiple descriptions of the items to be seized,
distinguishing it from this case.

exclusionary rule for facially invalid warrants, and a facially invalid warrant is what is clearly before me.

## III.    CONCLUSION

For the reasons set forth above, I will grant the motions to suppress the physical evidence seized during the search of the Wright apartments.